**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BRUCE DOUGLAS,

                  Petitioner,

v.

MORGAN STANLEY,

                  Respondent.

Case No.: 1:20-cv-02909

---

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S
MOTION TO COMPEL ARBITRATION**

---

Gregory S. Sparer, Esq., (GS 7209)
**BRESSLER, AMERY & ROSS**
A Professional Corporation
17 State St. 34th Floor
New York, NY 10004
(212) 425-9300
*Attorneys for Respondent Morgan Stanley*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................1

LEGAL ARGUMENT..............................................................................................2

    POINT I ..............................................................................................................2

        DOUGLAS LACKS STANDING TO COMPEL ARBITRATION ...................................2

    POINT II ............................................................................................................4

        THE ARBITRATION PANEL'S DETERMINATION THAT THE CLAIMS ARE INELIGIBLE FOR ARBITRATION IS BINDING AND FINAL ...................................................................................................4

    POINT III ...........................................................................................................10

        DOUGLAS HAS FAILED TO EXHAUST ALL ADMINISTRATIVE REMEDIES ...................................................................................................10

    POINT IV ...........................................................................................................11

        THE COURT SHOULD DISMISS THIS CASE ON THE BASIS OF THE DOCTRINE OF *FORUM NON CONVENIENS* ...............................................11

    POINT V ............................................................................................................15

        DOUGLAS' CLAIMS ARE  INELIGIBLE FOR ARBITRATION ................................15

CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page**

*Armstead v. Starbucks Corp.*
2017 U.S. Dist. LEXIS 190748 (S.D.N.Y. Nov. 17, 2017) ........................................................6

*Banco de Seguros del Estado v. J.P. Morgan Chase & Co.*
500 F. Supp. 2d 251 (S.D.N.Y. 2007).........................................................................................13

*Boroditskiy v. European Specialties*, *LLC*
314 F. Supp. 3d 487 (S.D.N.Y. 2018).......................................................................................5, 6

*Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*
155 F.3d 603 (2d Cir. 1998).......................................................................................................13

*Citigroup Global Markets Inc. v. Abbar*
761 F.3d 268 (2d Cir. 2014)................................................................................................6, 7, 8

*Coleman v. NASD*
1999 U.S. Dist. LEXIS 7172 (S.D.N.Y. May 14, 1999)............................................................10

*Datek Sec. Corp. v. National Ass'n of Sec. Dealers, Inc*.
875 F. Supp 230 (S.D.N.Y. 1995) .............................................................................................10

*Deutsche Bank Securities, Inc. v. Roskos*
2016 U.S. Dist. LEXIS 102682 (S.D.N.Y. Aug. 4, 2016) ......................................................7, 8

*DiRienzo v. Philip Servs. Corp.*
233 F.3d 49 (2d Cir. 2000), *adopted in part, vacated in part on other grounds en banc*, 294 F.3d
21 (2d Cir. 2000) .......................................................................................................................13

*Howard v. Goldbloom*
30 Cal. App. 5th 659 (1st Dist. 2018) ........................................................................................13

*Iragorri v. United Techs. Corp.*
274 F.3d 65 (2d Cir. 2001).............................................................................................12, 14, 15

*Jacobs v. USA Track & Field*
374 F.3d 85 (2d Cir. 2004)............................................................................................................3

*John Hancock Life Ins. Co. v. Wilson*
254 F.3d 48 (2d Cir. 2001)............................................................................................................8

*LAIF X SPRL v. Axtel, S.A. de C.V.*
390 F.3d 194 (2d Cir. 2004)..........................................................................................................3

*Lamps Plus v. Varela*
139 S. Ct. 1407 (2019).......................................................................................5, 6

*LaSala v. Bank of Cyprus Pub. Co.*
510 F. Supp. 2d 246 (S.D.N.Y. 2007)........................................................................13

*Lleras v. Excelaire Servs.*
2009 U.S. App. LEXIS 27590 (2d Cir. 2009) ..........................................................12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma*
218 A.D.2d 572 (N.Y. App. Div. 1995) ...................................................................16

*MFS Sec. Corp. v. SEC*
380 F.3d 611 (2d Cir. 2004)......................................................................................10

*M.K.N.S. Shipping S.A. v. Ravago LM PTE Ltd.*
423 F. Supp. 3d 41 (S.D.N.Y. 2019)...........................................................................6

*Oppenheimer & Co., Inc. v. Neidhardt*
56 F.3d 352 (2d Cir. 1995)..........................................................................................8

*Piper Aircraft v. Reyno*
454 U.S. 235 (1981).................................................................................12, 13, 14, 15

*Safra Securities, LLC v. Gonzalez*
No. 1:18-cv-04806-LLS (S.D.N.Y. July 9, 2018) ......................................................8

*SH Tankers Ltd. v. Koch Shipping Inc.*
2012 U.S. Dist. LEXIS 85729 (S.D.N.Y. June 19, 2012)...........................................3

*Silver v. Great Am. Ins. Co.*
29 N.Y.2d 356 (Ct. of App. 1972) ............................................................................15

*Spire Securities, LLC v. FINRA Dispute Resolution,* et al.
16-CV-9507 (VEC) (S.D.N.Y Dec. 13, 2016)............................................................8

*Starke v. SquareTrade, Inc.*
913 F.3d 279, 288 (2d Cir. 2019)................................................................................5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*
559 U.S. 662 (2009)......................................................................................................6

*Waldron v. Goddess*
61 N.Y.2d 181 (1984) ..................................................................................................6

*Woodford v. Ngo*
548 U.S. 81 (2006).....................................................................................................10

iii

*Yarmak v. Penson Financial Services, Inc.*
146 A.D.3d 642 (1st Dept. 2017)................................................................................4

**<u>Other Authorities</u>**

9 U.S.C. § 4 ........................................................................................................2, 3

9 U.S.C. § 10 .......................................................................................................4

Cal. Civ. Proc. Code § 1281.2 (Deering 2016) ...............................................11, 13

FINRA R. 3270 ....................................................................................................9

FINRA R. 3280 ....................................................................................................9

FINRA R. 9311 ...................................................................................................11

FINRA R. 12200 ..................................................................................4, 5, 6, 7, 9

FINRA R. 12206 ..............................................................................................15, 16

FINRA R. 12409 ..................................................................................................4

FINRA R. 12904 ..................................................................................................4

## PRELIMINARY STATEMENT

Morgan Stanley Smith Barney LLC, incorrectly sued here as Morgan Stanley ("Morgan Stanley"), respectfully requests that the Court dismiss the Motion to Compel Arbitration (the "Motion") filed by Bruce Douglas ("Petitioner" or "Douglas").

All claims brought by Douglas fail because there is no basis upon which the claims may be arbitrated against Morgan Stanley before Financial Industry Regulatory Authority ("FINRA"). As a threshold matter, Douglas lacks standing to bring a petition to compel arbitration. Douglas is not a Morgan Stanley customer, and there is no agreement to arbitrate his claims with Morgan Stanley. In the absence of a valid agreement, Morgan Stanley does not consent to arbitration with Douglas. Second, Douglas has failed to exhaust his administrative remedies, as required by the Securities and Exchange Commission ("SEC") and FINRA rules. Further, this Court is not the proper forum to hear Douglas' claims because no substantial nexus to New York exists. Rather, to the extent there is an appropriate forum, the California Central District Court, where the relevant conduct occurred and Douglas resides would be the forum.  However, California law requires an arbitration agreement to arbitrate, and thus Douglas initiated this action in New York. Finally, even if Douglas had valid claims to pursue in FINRA arbitration, and there was an arbitration agreement between the parties, they are ineligible because more than six years have passed since the events giving rise to his claims. Despite Douglas' relentless protests to the contrary, he is not entitled to arbitrate his claims at FINRA or any other arbitration forum.

## STATEMENT OF FACTS

This case is about Douglas' attempt to shoehorn Morgan Stanley into arbitration despite his admission that he was never a Morgan Stanley client. Douglas alleges to have lost money in several private placement investments with Travis Shannon ("Shannon"). Shannon was a

registered representative of Morgan Stanley in its Santa Barbara, California office. So there is no misunderstanding, the complained of investments were never offered nor approved by Morgan Stanley, nor was Douglas led to believe that they were offered by Morgan Stanley. Douglas rests his entitlement to arbitration with Morgan Stanley based on his mother's relationship with Morgan Stanley. This specious argument has failed twice before, yet Douglas remains undeterred and seeks a third bite at the apple.

Douglas' first attempt to arbitrate was dismissed for lack of jurisdiction in FINRA No. 19-02162 on December 26, 2019 (the "First Action"). His claims were dismissed again by the FINRA Director of arbitration as ineligible for arbitration, under FINRA Rule 12203 (FINRA Action No. 20-00471) on March 3, 2020 (the "Second Action"). Douglas now comes to this court to direct FINRA, (a non-party) to overturn an arbitration panel's decision and the FINRA Director's decision. Douglas seeks relief from this Court in the absence of new facts or legal arguments to support his claims. Douglas' third attempt to arbitrate is solely intended to circumvent the authority of both the FINRA arbitration panel and the FINRA Director. To hold otherwise would encourage customers to flock to courts in the hopes that the court will force arbitration and that new arbitrators will come to a more favorable decision. This not only encourages forum shopping, but it circumvents the power of self-regulatory organizations ("SRO") like FINRA and undermines the final, binding nature of their decisions.

## LEGAL ARGUMENT

### POINT I

### DOUGLAS LACKS STANDING TO COMPEL ARBITRATION

Douglas invokes the Federal Arbitration Act ("FAA"), 9 U.S.C. §4 in seeking to compel arbitration. Section 4, applies "when a party is aggrieved by the alleged failure, neglect, or refusal

of another to arbitrate under a written agreement for arbitration." 9 U.S.C. §4; *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004). Under Section 4, the court's role is "limited to determining two issues: (1) whether a valid agreement or obligation to arbitrate exists, and (2) whether one party to the agreement has failed, neglected, or refused to arbitrate." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194 (2d Cir. 2004); *Jacobs*, 374 F.3d at 88; *SH Tankers Ltd. v. Koch Shipping Inc.*, 2012 U.S. Dist. LEXIS 85729 *1, *8 (S.D.N.Y. June 19, 2012).

A party refuses "to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *SH Tankers Ltd.*, 2012 U.S. Dist. LEXIS 85729 at *8; *LAIF X SPRL*, 390 F.3d at 198. "[U]nless and until an adverse party has refused to arbitrate a dispute putatively governed by a contractual arbitration clause the petitioner cannot claim to be 'aggrieved' under the Federal Arbitration Act (FAA)." *Jacobs*, 374 F.3d at 89. Importantly, challenging the arbitrability of a claim before the arbitral tribunal "does not constitute a refusal to arbitrate." *LAIF X SPRL*, 390 F.3d at 199. Accordingly, where there is "no refusal to arbitrate, petitioner cannot use Section 4 as a vehicle to seek review of the [arbitrator's] decision about how to proceed with the arbitration process." *Id.*

Douglas is not an "aggrieved" party within the meaning of section 4. As a threshold matter, a panel of FINRA arbitrators determined that there was no agreement among Morgan Stanley and Douglas requiring arbitration. In flagrant disregard of the FINRA arbitrators' decision Douglas filed a new claim with FINRA, which was dismissed by the FINRA Director. Douglas then "cast the first litigation stone" by filing this action. There is no dispute that no written arbitration agreement exists. Obviously, Morgan Stanley cannot refuse to arbitrate a claim within the meaning of Section 4 when there is no agreement among the parties requiring arbitration.

Accordingly, Petitioner lacks standing to petition the court to compel arbitration under the FAA and the Motion must be denied.

**POINT II**

**THE ARBIRATION PANEL'S DETERMINATION THAT THE CLAIMS ARE INELIGIBLE FOR ARBITRATION IS BINDING AND FINAL**

### A.  The Two Prior Decisions by the Panel and FINRA Director are Final and Binding

Under FINRA Rule 12409, "[t]he panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are **final and binding** upon the parties." FINRA R. 12409 (*emphasis added*). The authority of arbitrators to interpret the Code and make decisions is broad, and arbitral awards or decisions are not, and should not be, easily overturned. *See Yarmak v. Penson Financial Services, Inc.*, 146 A.D.3d 642, 642 (1st Dept. 2017) (affirming the arbitrators' award even in the event that their decision violated FINRA rules because that would not provide a basis for vacatur).

Although FINRA provides no vehicle to appeal an arbitration award (FINRA R. 12904), **very limited grounds**, upon which a court may vacate an award do exist. These limited grounds, of which none are applicable here, include: if the award was procured by corruption, fraud or undue means; arbitrator evident partiality or corruption; arbitrator misconduct; the arbitrator(s) exceeded their powers; the arbitrator(s) manifestly disregarded the law; or the award was completely irrational. 9 U.S.C. §10. There being no basis to vacate the FINRA's prior decisions, the awards should be respected by the Court and allowed to stand.

Douglas has been heard twice in FINRA arbitration, and his claims were properly denied by the body that implemented and enforces Rule 12200. On two occasions, FINRA has twice applied the Rule and each time determined that Douglas' purported claims are not eligible to be

4

heard pursuant to the Rule.   FINRA fully considered Petitioner's arguments after extensive briefings and a lengthy telephonic hearing. It would be unprecedented if Douglas were allowed to use the court to compel arbitration of the same claims that were validly dismissed twice before. The decisions of FINRA must have meaning and finality. There is no basis to disturb the orders in the First Action nor the Second Action.   Accordingly, the court must deny the Motion.

## B. The Panel Correctly Determined FINRA Lacks Jurisdiction over Douglas' Claims

FINRA jurisdiction may only be derived from (1) the consent of the parties in a written agreement to arbitrate; or (2) FINRA Rule 12200. FINRA Rule 12200 sets forth three requirements that must be satisfied to confer jurisdiction to arbitrate: (1) arbitration under the code is either required by a written agreement or requested by the customer, (2) the dispute is between a customer and a member or associated person of a member; **and** (3) the dispute arises in connection with the business activities of the member or the associated person. FINRA R. 12200. Remarkably, Douglas cannot satisfy any of these three conditions.  There is no written agreement among Morgan Stanley and Douglas to arbitrate.  Douglas is not a Morgan Stanley customer. And, the dispute does not arise in connection with the business activities of Morgan Stanley, rather the claim concerns the unauthorized activities of Shannon, who is not a party to this action.

### 1.   No Agreement to Arbitrate Exists

It is settled that "arbitration is strictly a matter of consent." *Lamps Plus v. Varela*, 139 S. Ct. 1407, 1415 (2019). Accordingly, the court must first consider whether the parties agreed to arbitrate their claims. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (there must be a "meeting of the minds" and a "manifestation of mutual assent" to arbitrate). In determining whether the parties' have agreed to arbitrate, the court must seek to give effect to the parties' intent and reasonable expectations. *See Boroditskiy v. European Specialties, LLC*, 314 F.

Supp. 3d 487, 493 (S.D.N.Y. 2018). The "threshold for clarity of [an] agreement to arbitrate is greater than with respect to other contractual terms." *Waldron v. Goddess,* 61 N.Y.2d 181, 185 (1984). For example, silence is not enough to find consent to arbitrate. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2009). Further, the Supreme Court has refused to infer consent when interpreting fundamental arbitration questions. *Varela*, 139 S. Ct. at 1417 (holding that ambiguity does not provide a sufficient basis to find consent to arbitrate).

To compel arbitration, there must be evidence "affirmatively establishing the parties clearly, explicitly, and unequivocally agreed to arbitrate." *Armstead v. Starbucks Corp.*, 2017 U.S. Dist. LEXIS 190748 *1, *6 (S.D.N.Y. Nov. 17, 2017). The policy favoring arbitration does not apply where the validity of the agreement to arbitrate is in question. *See Citigroup Global Markets Inc. v. Abbar,* 761 F.3d 268, 274 (2d Cir. 2014); *M.K.N.S. Shipping S.A. v. Ravago LM PTE Ltd.*, 423 F. Supp. 3d 41, 43 (S.D.N.Y. 2019) ("While federal arbitration policy may help to define the scope of what the parties are agreeing to when they agree to arbitrate a contractual dispute, it cannot create a contract between non-contracting parties.").

Here, Douglas cannot overcome the undisputed fact that there is no agreement to arbitrate between Douglas and Morgan Stanley. It would be unjust for the court to compel arbitration where the parties did not intend or reasonably expect to arbitrate a dispute. Accordingly, the first requirement of FINRA Rule 12200 is not satisfied.

### 2.   Douglas is Not a "Customer" of Morgan Stanley

FINRA Rule 12200 requires FINRA member firms to arbitrate claims when "requested by the customer" if the dispute is among a member firm and a "customer." FINRA R. 12200. The Second Circuit has defined a "customer" for purposes of FINRA Rule 12200 as "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an

account with a FINRA member." *Abbar,* 761 F.3d at 274-275 ("[T]he word 'customer' must be 'construed in a manner consistent with reasonable expectations of FINRA members.") (*quoting Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, LTD*, 661 F.3d 164, 171 (2d Cir. 2011); *see also Deutsche Bank Securities, Inc. v. Roskos*, 2016 U.S. Dist. LEXIS 102682 (S.D.N.Y. Aug. 4, 2016). The "only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made; parties and **courts need not wonder whether myriad facts will 'coalesce into a functional concept of the customer relationship**.'" *Abbar*, 761 F.3d at 276 (*internal citations omitted*) (*emphasis added*).

Douglas simply is not a "customer" of Morgan Stanley under FINRA Rule 12200. Douglas neither purchased a good or service from Morgan Stanley, nor did he maintain a Morgan Stanley account. Despite these undisputed facts, Douglas claims he is a customer of Shannon, and by extension a customer of Morgan Stanley. This attempt to create a customer relationship is fatally flawed.  First, Douglas fails to point to any written agreement, email communication, proof of payment or any other evidence suggesting that he was Shannon's customer. Further, nothing suggests that Douglas believed, or was led to believe, that Shannon was acting as an agent of Morgan Stanley or that the alleged outside investments were approved by Morgan Stanley.  Indeed, Douglas concedes he was not a customer and that his relationship with Morgan Stanley was vicarious through his mother, not through Shannon.

Even if Douglas could establish a business relationship with Shannon and overcome his admission that his relationship with Morgan Stanley was only through his mother, it does not follow that Douglas would be a customer of Morgan Stanley. It remains unchanged that Douglas never had an account with Morgan Stanley, nor did he purchase any goods or services from Morgan Stanley. If any relationship existed here, it was between Douglas and Shannon alone.

Accordingly, Douglas' claims fail, just as the same claims failed in *Abbar* and *Roskos*.

Douglas' reliance on *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 357 (2d Cir. 1995), which was later limited by *Abbar*, is misplaced. In *Abbar*, the court limited the "rare instances of injustice" exception to the definition of a "customer" to situations wherein "claimant would have had an account with the [FINRA] member but for the fraud asserted in the FINRA arbitration." *Abbar*, 761 F.3d at 275-276. Douglas was never led to believe, nor did he believe, that he had an account or relationship with Morgan Stanley. As Douglas readily concedes, he only considered himself a Morgan Stanley customer **because of his close relationship with his mother, a Morgan Stanley customer**. Because Douglas was never defrauded into thinking he had a direct relationship with Morgan Stanley or that he would be considered a customer of Morgan Stanley, there can be no "injustice" here or otherwise.

Equally unavailing is Douglas' reliance on cases discussing failure to supervise claims, as they mischaracterize the issue at hand and are readily distinguished. For example, *Spire Securities, LLC v. FINRA Dispute Resolution*, et al., 16-CV-9507 (VEC) (S.D.N.Y. Dec 13, 2016), concerned a FINRA member's argument that it had no duty to supervise a representative's disclosed outside business activities. In this case, there is no dispute that Shannon **did not disclose** his outside business activities to Morgan Stanley.[1]

No law, rule, or contract requires Morgan Stanley to take any action with respect to assets, especially those of non-customers, that are not held in Firm accounts. Morgan Stanley cannot be expected to know about the existence of, or monitor the assets or accounts of non-customers.

---

[1] Further, the Spire decision relied on the *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001) decision, also relied on by Petitioner, which has been limited and superseded by the *Abbar* decision. Second, the *Safra Securities, LLC v. Gonzalez,* No. 1:18-cv-04806-LLS (S.D.N.Y. July 9, 2018) case concerned a FINRA member's argument that the claimant was a customer of the parent company of the FINRA member, not the FINRA member itself, a situation very dissimilar from the facts presented here.

Morgan Stanley never agreed to supervise any of Douglas' assets, which were all purchased away from Morgan Stanley and held privately or at other financial institutions. FINRA Rule 3270 requires financial advisors to provide written notice of outside business interests or activities to their member firm. Further, FINRA Rule 3280 makes clear that FINRA member firms, like Morgan Stanley, are only required to supervise outside business activities of a financial advisor that have been disclosed and approved. FINRA R. 3280. Common sense and the FINRA rules dictate that it is unreasonable and impossible for FINRA member firms to be responsible for and monitor investments they neither know about, nor control. Importantly, a duty to supervise **disclosed outside business activities** does not convert a non-customer into a customer, and there is no basis for the Petitioner to assert otherwise. Therefore, Douglas' assertion, that he, a non-customer, has the right to arbitrate claims against Morgan Stanley, has no merit and fails to meet the second requirement of FINRA Rule 12200.

### 3.   The Claims Do Not Arise from Morgan Stanley's Business Activities

The final requisite of Rule 12200 is not satisfied because Douglas' claims do not concern the business activities of Morgan Stanley, but rather the undisclosed, unauthorized outside activities of Shannon, who is not a party in this action.  The activities of Shannon cannot reasonably be attributed to Morgan Stanley when the Firm did not know of the activities.  For the same reasons that Morgan Stanley cannot be responsible for supervising outside undisclosed business activities, it defies logic to hold that Shannon's individual actions are Morgan Stanley's business activities for purposes of Rule 12200.

As Douglas' claims fail all three conditions of FINRA Rule 12200, which are required for FINRA to exercise jurisdiction over a dispute, as the arbitrators found in the First Action and the FINRA Director in the Second Action correctly determined. Accordingly, the court must dismiss

the Petitioner's motion to compel.

### POINT III

### DOUGLAS HAS FAILED TO EXHAUST ALL ADMINISTRATIVE REMEDIES

As a general rule, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 621 (2d Cir. 2004) (*citing Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003). Proper exhaustion of administrative remedies "means using all steps that the agency holds out." *Woodford v. Ngo*, 548 U.S. 81, 90, 91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

A "litigant is required to pursue all of his administrative remedies before he will be permitted to seek judicial relief." *Coleman v. NASD*, 1999 U.S. Dist. LEXIS 7172 *1, *5 (S.D.N.Y. 1999) (*citing Touche Ross & Co. v. SEC*, 609 F.2d 570, 574 (2d Cir. 1979)). Specifically, the doctrine requiring the exhaustion of administrative remedies "applies with equal force to the disciplinary proceedings of NASD," now known as FINRA. *Datek Sec. Corp. v. National Ass'n of Sec. Dealers, Inc*., 875 F. Supp 230, 233 (S.D.N.Y. 1995). The SEC has long applied an exhaustion requirement in its review of SRO decisions. *See MFS Sec. Corp*., 380 F.3d at 621. The exhaustion requirement serves an important purpose because if individuals were "free to bring their SRO-related grievances before the SEC without first exhausting SRO remedies, the self-regulatory function of SROs could be compromised." *Id*. Further, the requirement "promotes the efficient resolution of disciplinary disputes between SROs and their members and is in harmony with Congress's delegation of authority to SROs to settle, in the first instance, disputes relating to their operations." *Id*. at 622. This Circuit explicitly recognized that "a person's failure to exhaust

remedies made available by an SRO" specifically NASD, now known as FINRA, "bars judicial review of the SRO's disciplinary action. *Id.* (*citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 616 F.2d 1363, 1370 (5th Cir. 1980); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979)).

Douglas has failed to exhaust the administrative remedies provided by FINRA. Under FINRA's procedures, a firm or individual has the right to appeal a hearing panel decision to the National Adjudicatory Counsel ("NAC"). The NAC will then determine if the panel's findings were legally correct, which will operate as FINRA's final action. The firm or individual can then appeal FINRA's decision to the SEC and after the SEC to a federal court. *See* FINRA R. 9311. Here, the FINRA Director determined that the panel correctly found Douglas' claims ineligible for FINRA arbitration and Douglas then immediately filed this action in federal court. Douglas did not exhaust any of the administrative processes provided by FINRA, nor did he bring his appeal to the SEC. Therefore, the court should not allow Douglas to circumvent the powers of SROs to settle disputes relating to their operations. Accordingly, the court must deny the Motion.

## POINT IV

## THE COURT SHOULD DISMISS THIS CASE ON THE BASIS OF THE DOCTRINE OF *FORUM NON CONVENIENS*

California is the appropriate forum to vet Douglas' allegation. Douglas and Morgan Stanley's Santa Barbara Branch are both California residents, and the events underpinning this dispute occurred in California. California law requires an executed arbitration agreement before arbitration can be compelled.  Cal. Code. Civ. Proc. § 1281.2 (arbitration may only be compelled where an "agreement to arbitrate the controversy exists"). Douglas asserted his claims in this forum for one reason; to avoid the California requirement of a signed an arbitration agreement.

11

Therefore, the Court should exercise the discretion granted to it under the *forum non conveniens* doctrine and dismiss this case. *See Piper Aircraft v. Reyno* 454 U.S. 235, 249 (1981); *Lleras v. Excelaire Servs.*, 2009 U.S. App. LEXIS 27590 *1, *4 (2d Cir. 2009). The Second Circuit has developed a three-step analysis to determine whether to dismiss a lawsuit under the doctrine of *forum non conveniens*: (1) determine the degree of deference properly accorded to the petitioner's choice of forum, (2) consider whether there is an adequate alternative forum to adjudicate the dispute; and (3) balance the private and public interests implicated by petitioner's choice of forum to determine whether the case would be better adjudicated in the alternative forum. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001).

### A.  Petitioner's Choice of Forum is Entitled to Minimal Deference

Although a *forum non conveniens* analysis ordinarily begins with a strong presumption in favor of petitioner's choice of forum, the appropriate degree of deference "varies with the circumstances." *Iragorri*, 274 F.3d at 71.  Where, as here, a petitioner does not file suit in his home forum, less deference is due. *See id.* The required deference "is not dispositive and … it may be overcome." *Id.*; *see also Piper*, 454 U.S. at 255 n.23 ("forum choice should not be given dispositive weight"). Further, if convenience suggests that the chosen forum would be unnecessarily burdensome for the respondent or the court, dismissal is proper. *See Iragorri*, 274 F.3d at 71. Douglas did not file suit in his home state, thus, less deference is due to his choice of forum. Moreover, Douglas should expect to litigate in California, where he resides and allegedly interacted with his mother's financial advisor.

Additionally, the chosen forum bears little connection to the case. All of the conduct at issue occurred in California, where Douglas and the Morgan Stanley Santa Barbara branch are located. None of the relevant evidence or witnesses are present in New York. This demonstrates

that Petitioner's choice of forum could not have been motivated by convenience. *See LaSala v. Bank of Cyprus Pub. Co*., 510 F. Supp. 2d 246, 257 (S.D.N.Y. 2007) ("A plaintiff's choice of forum is also given reduced emphasis where… the operative facts upon which the litigation is brought bear little material connection to the chosen forum."). Clearly, "litigating [the] suit in New York would not be convenient for anyone", and accordingly, this Court should afford a minimal amount of deference to the Petitioner's choice of forum in its *forum non conveniens* analysis. *See Banco de Seguros del Estado v. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 261 (S.D.N.Y. 2007).

### B.  The Alternative Forum in California is Adequate

An alternative forum is adequate if (1) respondents are subject to service of process there, and (2) the forum permits litigation of the subject matter of the dispute. *See Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998). Moreover, a finding that an alternative forum is inadequate is very rare.  *See Piper*, 454 U.S. at 254 n. 22; *DiRienzo v. Philip Servs. Corp*., 233 F.3d 49, 57 (2d Cir. 2000), *adopted in part, vacated in part on other grounds en banc*, 294 F.3d 21, 29 (2d Cir. 2002) ("The alternate forum will normally be adequate so long as respondent is amenable to process there.").

California is an appropriate and adequate forum providing remedies to Douglas. First, Morgan Stanley may be served with process in California at its Santa Barbara Branch Office. Second, California law permits litigation of the subject matter of this case. An action to compel arbitration is permitted in California. *See* Cal. Code. Civ. Proc. § 1281.2. Under California law, the right to compel arbitration depends upon the parties' contract and arbitration will only be compelled where the parties have agreed in writing to arbitrate. *See Howard v. Goldbloom*, 30 Cal. App. 5th 659, 663 (1st Dist. 2018). Clearly, California is an adequate forum because (1)

respondents are subject to service of process there, and (2) California law permits Petitioner to bring a motion to compel arbitration. However, as the California code requires "an agreement to arbitrate," it is clear that Douglas filed this action in the Southern District of New York because under the California applicable law, this matter is not subject to arbitration.  There is no arbitration agreement between the parties.

### C.  The Balance of Both Private and Public Factors Weigh in Favor of Dismissal

The private interest factors to be considered in a *forum non conveniens* analysis relate to the litigants' convenience and include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the enforceability of a judgment in the forum; (5) a defendant's ability to pursue contribution claims against potentially responsible co-defendants or third parties; and (6) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Piper*, 454 U.S. at 241 n.6 (*citing Gulf Oil Co. v. Gilbert*, 330 U.S. 508-509 (1947)); *Iragorri*, 274 F.3d at 73-74.

Relevant private interest factors indubitably weigh in favor of the California forum. Any key witnesses or documentary evidence central to both parties' claims will be found in California, rather than New York. For example, Douglas, his mother, and representatives from Morgan Stanley's branch in Santa Barbara are likely witnesses to the relevant facts and all three reside in California. It makes little sense to force all parties to travel to New York when all witnesses reside and all events transpired in California. Further, the costs and inconvenience of obtaining attendance of witnesses and transporting documents would be much greater in New York than in California. Conversely, the California forum is convenient and cost-effective for all witnesses and parties.

The public interest factors to be considered include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided in their home forum; (3) the imposition of jury duty on the citizens of a forum that is unrelated to the subject of the litigation; (4) the interest in having a case tried in a forum familiar with the law that governs the action; and (5) the avoidance of unnecessary problems in conflicts of law or in the application of foreign law. *Piper*, 454 U.S. at 241 n.6 (*citing Gulf Oil Co. v. Gilbert*, 330 U.S. 508-509 (1947)); *Iragorri*, 274 F.3d at 74.

Relevant public interest factors in the *forum non conveniens* analysis support dismissal of Petitioner's Motion. First, it is undisputed that New York courts have long been overburdened. *See Silver v. Great Am. Ins. Co.*, 29 N.Y.2d 356, 362 (Ct. of App. 1972) ("the fact that litigants may more easily gain access to our courts… requires a greater degree of forbearance in accepting suits which have but minimal contact with New York."). Additionally, no local interest exists in New York, if anything the issues arose in California and a local interest exists there. Nothing in this case justifies a New York forum. No relevant conduct took place here, no party identified any important New York based witnesses or documents, no related litigation was pending in New York, and no other circumstances support an argument that New York is an appropriate forum. The Petitioner's choice of forum deserves minimal deference, an adequate forum exists in California, and both private and public factors support dismissal. Accordingly, Morgan Stanley requests that this court dismiss the Petitioner's Motion based on *forum non conveniens*.

## POINT V

## DOUGLAS' CLAIMS ARE INELIGIBLE FOR ARBITRATION

FINRA Rule 12206(a) provides: "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." Where a claim falls outside the six-year Rule 12206(a) eligibility window, it must be dismissed.

*See* FINRA Rule 12206(b).  As a general rule, the purchase date of the security at issue is the "occurrence or event" giving rise to the claim. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ohnuma*, 218 A.D.2d 572, 573 (N.Y. App. Div. 1995).

Here, Petitioner invested in private placements allegedly offered by Shannon in 2010. The occurrence giving rise to the claim occurred in December, 2010, **at the latest**. Douglas filed his Statement of Claim with FINRA on February 8, 2020, more than 10 years after the event giving rise to his claim. Douglas' claim is for alleged losses in three private placement investments with Aerobat; Telecoast Communications, LLC; and Zindigo.  However, because all of the occurrences or events giving rise to the claim for losses took place before December, 2014,  i.e., six years prior to the date the Statement of Claim was filed, these claims are ineligible for FINRA arbitration.

The purpose of Rule 12206 is to bar the adjudication of stale claims where the passage of time creates the risk that witnesses' memories have faded and documents relevant to the inquiry may have been lost or destroyed. This case involves events that occurred in or around 2010. Many important documents are long past their retention periods and difficult to locate, if they can be located at all. If all witnesses to key transactions and occurrences over ten years ago are alive at this point, their memories of relevant events will have almost certainly faded over the years, and the Panel will be left to guess about many important events. Permitting Douglas' claim for alleged investment losses to proceed at FINRA would be unfair to Morgan Stanley and to the Panel itself. Under the plain language of the FINRA Rules and the undisputed facts as to when the alleged losses occurred, Petitioner's claims are ineligible for arbitration. Accordingly, the court must deny the Motion.

## <u>CONCLUSION</u>

There is no basis for reconsideration of  Douglas' claims which have already been heard and dismissed twice before FINRA. For the foregoing reasons, Petitioner's motion to compel arbitration must be denied.

**BRESSLER, AMERY & ROSS, P.C.**

By:____/s/ *Gregory S. Sparer*_____
Gregory S. Sparer, Esq. (GS 7209)
**BRESSLER, AMERY & ROSS**
A Professional Corporation
17 State St. 34th Floor
New York, NY 10004
(212) 425-9300
*Attorneys for Respondent Morgan Stanley*

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on May 4, 2020 with a copy of this document via the Court's CM/ECF system.

/s/ *Gregory S. Sparer*
Gregory S. Sparer, Esq.