UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE DOUGLAS,

                    Petitioner,

    - against -

MORGAN STANLEY,

                    Respondent.

**ORDER**

20 Civ. 2909 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      Petitioner Bruce Douglas brings this action under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., to compel Respondent Morgan Stanley to submit to arbitration before the Financial Industry Regulatory Authority ("FINRA"). (Pet. (Dkt. No. 4) ¶ 1) Respondent opposes the petition. (Resp. Opp. (Dkt. No. 8))

      For the reasons stated below, the petition will be denied.

## BACKGROUND

      Bruce Douglas is a California resident. (Pet. (Dkt. No. 4) ¶ 2) Morgan Stanley is a financial services company with its principal place of business in New York. (Id. ¶ 3)

### I.    THE FINRA ARBITRATION

#### A.    August 1, 2019 Statement of Claim

      On August 1, 2019, Bruce Douglas and his mother, Mary A. Douglas, filed a Statement of Claim with FINRA commencing an arbitration proceeding against Morgan Stanley. (Weinstein Decl., Ex. A (Aug. 1, 2019 Stmt. of Claim) (Dkt. No. 4-4))

      In their Statement of Claim, Petitioner and his mother allege that between 2010 and 2016, they invested approximately $352,000 in three private companies – Aerobat, Telecoast Communications, LLC, and Zindigo, Inc. – at the recommendation of Travis Shannon, who was

then Mary Douglas's Morgan Stanley financial advisor. (Id. at 3, 6-8) At the time, Mary Douglas had an account with Morgan Stanley, while Bruce Douglas did not. (Id. at 4-5) The Statement of Claim alleges, however, that Mary Douglas and her son Bruce Douglas "are . . . extremely close financially, and . . . share funds and some of the investments discussed [in the Statement of Claim]." (Id. at 5) Accordingly, "[a]lthough Mr. Douglas did not maintain an account with Morgan Stanley, Mr. Douglas considered himself a client of Mr. Shannon because he was intimately involved with his mother's finances and looked after her needs." (Id.)

The three companies in which Mary Douglas and her son invested "never returned [their] principal investments and they suffered almost a complete loss." (Id. at 6) The Statement of Claim further alleges that in June 2013, Morgan Stanley "terminated Mr. Shannon (allowed him to voluntarily resign) due to 'outside business activities and investments which were not approved by the firm.'" (Id. at 8) Shannon's unapproved activities included recommending that his clients invest in the companies that he pitched to Petitioner and his mother. (Id. at 6-8)

In August 2014, FINRA "sanctioned Mr. Shannon for engaging in two outside business activities." (Id. at 3) And in March 2016, FINRA "barred Mr. Shannon from the financial industry for failing to comply with a settlement agreement." (Id.)

The Statement of Claim asserts various claims against Morgan Stanley premised on its failure to supervise Shannon. (Id. at 3) Petitioner and his mother sought, inter alia, $350,000 in compensatory damages. (Id. at 32)

B. **Morgan Stanley's Motion to Sever and Dismiss Petitioner's Claim**

In an August 23, 2019 letter to Petitioner and his mother, Morgan Stanley asserted that "the arbitration of [Bruce Douglas's] purported claims is not required" under FINRA Rule 12200. (Weinstein Decl., Ex. B (Aug. 23, 2019 Morgan Stanley Ltr.) (Dkt. No. 4-5) at 1-2)

FINRA rule 12200 provides that

2

>   Parties must arbitrate a dispute under the Code if:
>
>   - Arbitration under the Code is either:
>
>       (1) Required by a written agreement, or
>
>       (2) Requested by the customer;
>
>   - The dispute is between a customer and a member or associated person of a member; and
>
>   - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200.

In its August 23, 2019 letter, Morgan Stanley argues that arbitration of Bruce Douglas's claim is not required because (1) "[t]here is no written agreement to which Bruce Douglas is a party that would require Morgan Stanley to arbitrate any dispute with him," and (2) Bruce Douglas "was never a Morgan Stanley Customer." (Weinstein Decl., Ex. B (Aug. 23, 2019 Morgan Stanley Ltr.) (Dkt. No. 4-5) at 1 (emphasis in original))

On September 24, 2019, Morgan Stanley filed a motion with FINRA seeking severance of Petitioner's claim from that of his mother in light of FINRA Rule 12200. (Weinstein Decl., Ex. C (Sept. 24, 2019 Mot. to Sever & Dismiss) (Dkt. No. 4-6) at 3-4)[1] In its motion, Morgan Stanley also argues that – once severed – Petitioner's claim should be dismissed under FINRA Rule 12504(a), which provides for dismissal where an arbitration panel determines that "the moving party was not associated with the account(s), security(ies), or conduct at issue." (Id. at 4-5 (quoting FINRA Rule 12504(a)(6)(B))

---

[1] In that same motion, Morgan Stanley agrees that Mary Douglas's claim is properly before FINRA. (Weinstein Decl., Ex. C (Sept. 24, 2019 Mot. to Sever & Dismiss) (Dkt. No. 4-6) at 4)

In a November 5, 2019 opposition brief, Bruce Douglas argues, inter alia, that he qualifies as a "customer" under FINRA Rule 12200 and that dismissal is not appropriate under FINRA Rule 12504. (Weinstein Decl., Ex. J (Nov. 5, 2019 Opp. Br.) (Dkt. No. 4-13) at 25-33) Morgan Stanley filed a reply brief on November 11, 2019. (Weinstein Decl., Ex. J (Nov. 11, 2019 Reply Br.) (Dkt. No. 4-13) at 36-52)

On December 23, 2019, the parties participated in a pre-hearing conference before a panel of FINRA arbitrators. (Weinstein Decl., Ex. D (Dec. 24, 2019 FINRA Order) (Dkt. No. 4-7) at 1)

On December 24, 2019, the FINRA panel issued an order stating that (1) "[Morgan Stanley's] Motion to Sever and Dismiss Claims of Non-Customer Bruce Douglas is granted[,]" and (2) "Claimants are ordered to file an amended Statement of Claim removing Bruce Douglas as a Claimant and leaving Mary Douglas as the sole Claimant." (Id. at 2)

### C.  February 8, 2020 Statement of Claim

On February 8, 2020, Petitioner filed a second Statement of Claim asserting similar allegations against Morgan Stanley premised on its failure to supervise Travis Shannon. (Weinstein Decl., Ex. E (Feb. 8, 2020 Stmt. of Claim) (Dkt. No. 3-8))

In the second Statement of Claim – in which Petitioner is listed as the sole claimant (see id. at 1) – Petitioner alleges that

> Mr. Shannon recommended that Mr. Douglas invest in Zindigo and Aerobat and Mr. Douglas invested approximately $237,000 into these companies based upon Mr. Shannon's recommendations. Mr. Shannon continued to visit Mr. Douglas' flooring company during normal business hours when making these recommendations and discussing his investment advice with his client Mr. Douglas.

(Id. at 5) Petitioner seeks compensatory damages in the amount of $237,000. (Id. at 31)

4

In a March 3, 2020 letter, FINRA informed Petitioner that it had "determined that the claims you have alleged in your [second] statement of claim are not eligible for arbitration." (Weinstein Decl., Ex. H (Mar. 3, 2020 FINRA Ltr.) (Dkt. No. 4-11) at 1)  FINRA therefore "decline[d] to accept" the claims.  (Id.)

That same day, Petitioner moved for reconsideration of that determination. (Weinstein Decl., Ex. I (Mar. 3, 2020 Mot. for Reconsid.) (Dkt. No. 4-12) at 2)  In his motion, Petitioner again argues, inter alia, that he qualifies as a "customer" of Morgan Stanley under FINRA Rule 12220.  (Id. at 7-16)  Petitioner also attaches as an exhibit to his motion a February 7, 2014 memorandum, signed by Petitioner and Travis Shannon, which appears to reflect a $25,000 investment by Petitioner in shares of Aerobat.  (Id. at 31)  Petitioner also attaches a January 15, 2014 email from Shannon to Petitioner in which Shannon describes a potential investment opportunity in Zindigo.  (Id. at 33-34)

Morgan Stanley filed an opposition brief on March 10, 2020 (Weinstein Decl., Ex. J (Mar. 10, 2020 Mot. for Reconsid. Opp. Br.) (Dkt. No. 4-13)), and Petitioner filed a reply on March 11, 2020.  (Weinstein Decl., Ex. K (Mar. 11, 2020 Mot. for Reconsid. Reply Br.) (Dkt. No. 4-14))

In an April 6, 2020 letter, FINRA notified Petitioner that "[t]he Director has reviewed Claimant's Motion for Reconsideration of Denial of FINRA's Forum dated March 3, 2020 . . . and has determined to deny Claimant's Motion for Reconsideration."  (Weinstein Decl., Ex. L (Apr. 6, 2020 FINRA Ltr.) (Dkt. No. 4-15) at 1)

## II.     PROCEDURAL HISTORY

On April 10, 2020, Petitioner filed the instant petition under Section 4 of the FAA to compel Morgan Stanley to submit to a FINRA arbitration.  (Pet. (Dkt. No. 4))

Morgan Stanley filed an opposition brief on May 4, 2020 (Dkt. No. 8), and Petitioner filed a reply on May 7, 2020. (Dkt. No. 9)

## DISCUSSION

Petitioner contends that arbitration of his dispute with Morgan Stanley is appropriate under FINRA Rule 12200 (Pet. (Dkt. No. 4) ¶ 1), and he seeks an order under Section 4 of the FAA "compelling Respondent to arbitrate Petitioner's claims before FINRA." (Id. at 6)

Morgan Stanley argues, inter alia, that Petitioner "is not an 'aggrieved' party within the meaning of section 4 [of the FAA]," and therefore "lacks standing to petition the court to compel arbitration." (Resp. Opp. (Dkt. No. 8) at 8-9)

### I. LEGAL STANDARD

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Under Section 4, "'the role of courts is limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004) (quoting Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004)). "A party has refused to arbitrate if it 'commences litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so.'" Id. (brackets in original) (quoting Jacobs, 374 F.3d at 89); see also PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995) (an action to compel arbitration accrues "only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise

6

unambiguously manifesting an intention not to arbitrate the subject matter of the dispute"), abrogated on other grounds in Morgan v. Sundance, Inc., 596 U.S. 411 (2022).

## II. ANALYSIS

As an initial matter, Morgan Stanley has not "commence[d] litigation" against Petitioner. LAIF X SPRL, 390 F.3d at 198 (citation and quotation marks omitted). To the contrary, Petitioner was the first to commence litigation, filing the instant action to compel Morgan Stanley to submit to an arbitration before FINRA – an arbitration that FINRA has twice dismissed, first on December 24, 2019 through an arbitration panel (Weinstein Decl., Ex. D (Dec. 24, 2019 FINRA Order) (Dkt. No. 4-7) at 2), and again through an April 6, 2020 decision by the FINRA Director (Weinstein Decl., Ex. L (Apr. 6, 2020 FINRA Ltr.) (Dkt. No. 4-15) at 1). See Jacobs, 374 F.3d at 89 ("Indeed, it is petitioner who, by filing this action, seeks to avoid [the arbitrators'] determination . . . ." (emphasis in original)); SH Tankers Ltd. v. Koch Shipping Inc., No. 12 CIV. 00375 AJN, 2012 WL 2357314, at *3 (S.D.N.Y. June 19, 2012) ("[I]t was [petitioners] that cast the first litigation stone by filing this action protesting [respondent's] decision to abide by the [Society of Maritime Arbitrators Panel's] Ruling." (emphasis in original)).

Nor has Morgan Stanley failed to comply with any "order[] to arbitrate" issued by FINRA. LAIF X SPRL, 390 F.3d at 198 (citation and quotation marks omitted). When Petitioner and his mother filed their August 1, 2019 Statement of Claim, Morgan Stanley appeared before FINRA and filed a motion to sever and dismiss Petitioner's claims. Morgan Stanley's motion was filed within the arbitration proceedings. (See Weinstein Decl., Ex. C (Sept. 24, 2019 Mot. to Sever & Dismiss) (Dkt. No. 4-6)) The arbitration panel granted Morgan Stanley's motion. (Weinstein Decl., Ex. D (Dec. 24, 2019 FINRA Order) (Dkt. No. 4-7) at 2)

7

Petitioner then filed a second Statement of Claim, which FINRA again declined to accept. (Weinstein Decl., Ex. H (Mar. 3, 2020 FINRA Ltr. (Dkt. No. 4-11) at 1)  After Petitioner moved for reconsideration of the FINRA Director's March 3, 2020 dismissal of his second Statement of Claim, Morgan Stanley again filed an opposition brief.  But Morgan Stanley's opposition was filed as part of the arbitration proceedings.  (Weinstein Decl., Ex. J (Mar. 10, 2020 Mot. for Reconsid. Opp. Br.) (Dkt. No. 4-13))  And when FINRA denied Petitioner's reconsideration motion on April 6, 2020, that decision was made by the FINRA Director, and not because of any failure by Morgan Stanley to participate in the arbitration proceedings. (Weinstein Decl., Ex. L (Apr. 6, 2020 FINRA Ltr.) (Dkt. No. 4-15) at 1)

In sum, Morgan Stanley has fully participated in the FINRA proceedings and has complied with every order issued in that forum.  See LAIF X SPRL, 390 F.3d at 200 ("True, [respondent] has sought a stay of the arbitration, but it has made that application in the arbitral forum.  It has thus submitted itself to the arbitral forum. . . ."); Jacobs, 374 F.3d at 89 ("The fact that respondents raised before the AAA an objection to petitioner's Demand for Arbitration – and the fact that the AAA agreed with that objection – does not constitute a 'refusal to arbitrate' on the part of respondents."); SH Tankers, 2012 WL 2357314, at *3 ("KSI's refusal to forfeit a favorable ruling – obtained within arbitration – is hardly a refusal to submit to arbitration." (emphasis in original)).  There is thus no evidence that Morgan Stanley has "failed, neglected or refused to arbitrate" under Section 4 of the FAA.  LAIF X SPRL, 390 F.3d at 198 (citation and quotation marks omitted).

Moreover, the FINRA Director's termination of the arbitration proceedings on April 6, 2020, provides no basis for the instant action.  Petitioner "cannot use Section 4 as a vehicle to seek review of the [FINRA Director's] decision about how to proceed with the

arbitration process." Jacobs, 374 F.3d at 89. Nor can Petitioner "attempt to thwart the [FINRA Director's] ruling under the guise of 'compelling arbitration.'" SH Tankers, 2012 WL 2357314, at *4.

Petitioner, for his part, does not address Morgan Stanley's standing argument in his opposition brief, and cites no authority suggesting that he qualifies as an "aggrieved" party under Section 4 of the FAA. (See Pet. Reply (Dkt. No. 9))

For all of these reasons, Petitioner has not shown that he is "aggrieved" by the "failure, neglect, or refusal of [Morgan Stanley] to arbitrate" under Section 4 of the FAA. 9 U.S.C. § 4. Accordingly, his petition will be denied.

## CONCLUSION

The petition to compel arbitration (Dkt. No. 4) is denied. The Clerk of Court is directed to close this case.

Dated: New York, New York
November 22, 2024

SO ORDERED.

_Paul R. Gardephe_
Paul G. Gardephe
United States District Judge